Gillette v. Ballard.

### GILLETTE vs. BALLARD.

1. Usury will not be inferred when the opposite conclusion can be reasonably and fairly arrived at.

2. To sustain such a defence it must be shown that there was a usurious agreement.

3. The chattel mortgage in this case held not to be usurious in view of the nature of the whole transaction.

*Mr. McCarter*, for complainant.

*Mr. Coult*, for defendant.

THE VICE-CHANCELLOR.

The complainant's suit is to impeach a chattel mortgage made by himself to the defendant. The mortgage is for $5000, and covers the furniture and fixtures of the Continental Hotel, in the city of Newark. It was executed in the month of June, 1873, though the money had been advanced by the defendant early in 1871, to help the complainant in the purchase of the furniture and fixtures, and in taking charge of the hotel. In November, 1873, Ballard began proceedings for the collection of the mortgage debt, and Gillette filed his bill for relief, alleging that the loan was

usurious, praying for an account, and offering to pay whatever should be found due. An injunction was issued restraining a sale under the mortgage, and having now heard the cause upon the pleadings and the oral testimony of witnesses, I must advise that the complainant's case has not been established, and that his bill should be dismissed, with costs.

The case presented by the bill is, in brief, that being the proprietor of a hotel in Buffalo, he was induced by Ballard to give up that business, and become the purchaser of the furniture of the Continental Hotel, in Newark; that not having sufficient capital himself for the purchase, Ballard proposed to lend him $5000, on condition that Gillette would furnish board at the hotel for Ballard, his wife and two children, as a compensation for the use of the money so loaned, Ballard at the same time alleging, that as occasions might require, he would advance such additional sums as might be needed to enable Gillette to carry on the business; that Ballard did, in fact, advance the $5000; that he boarded with the family, as above mentioned, at complainant's hotel, from the early part of 1871 to the latter part of 1873; that although Ballard rendered, from time to time, aid and services in the business, and although Mrs. Ballard officiated more or less as the female head of the house, having the care or supervision of it, yet that the value of such aid and services, together with the lawful interest of the $5000, was not enough to compensate for the board and entertainment which Ballard and his family received. The bill prays that Ballard be decreed to account, that he be credited with the fair value of his own services, and the services of his wife, and charged with the fair price of the entertainment and board. It alleges that upon such accounting, a balance will be due himself, but if due to Ballard, the complainant offers to pay it when ascertained.

The suit can stand, only on the ground that there was a usurious *agreement*. The evidence does not at all warrant, in my judgment, the conclusion that there was. I think the true nature of the transaction was essentially different, and

that the loan of money was but one feature of an arrange-
ment for the taking and carrying on of the business of the
hotel, an arrangement by which Gillette, who was unmarried,
was to become the proprietor, and Ballard and wife to live
with him and co-operate in making the enterprise a success.
It was meant and expected to be an arrangement of a friendly
and confidential nature, equally advantageous to both.    They
were intimate friends.    Gillette had been a few weeks before
visiting at Ballard's house in Newark, and while there the
subject of the hotel had been suggested, and also a partner-
ship in it between Ballard and himself.   He returned to
Buffalo, leaving Ballard to make further inquiries and report.
On the 17th of December, 1870, Ballard sent him a letter,
which is an exhibit in the case, and is relied on to establish
the usurious bargain.    After mention made of the terms on
which the hotel could be obtained, the letter goes on as fol-
lows: "As to my going into the thing as a partner, why I
would rather not do so.    I am satisfied that there is a splen-
did chance for one to make money out of it, but it would not
be as well for either of us to split it up and divide the profits.
I'll tell you what I will do.    I will lend you $5000 without
interest, and will aid you in every way possible; will attend
to your finances and books, and help you all I can, if you
will give me my choice of rooms, and board for myself and
family.    And if it also becomes necessary to get more furni-
ture for other rooms, (and of course it will,) why, I'll go
security for them ; in fact, you know enough of me, to know
what I would do for you when required ; this, I think, will
make much more money for you than if I was a partner.
Don't look at this in anything but a business point of view,
and decide according to your convictions."

In this letter the part to be performed by Ballard's wife is
not specified, but it was understood between the parties, and
in view of the evidence and facts of the case, may be regarded
as comprehended within the general promise it contains to
give aid in every way possible.  There can be no doubt that her
part was meant to be, as it afterwards became, a material ele-

ment of the arrangement. In pursuance of these terms the hotel was taken and carried on. Efficient and valuable services of different kinds were rendered by Ballard. His wife, who was known to Gillette to be especially qualified to act as the female head of the establishment, did so act, and is proved to have done it well.

In the summer of 1873, Gillette was married and went to Europe for some weeks with his wife. On his return, the supervision of Mrs. Ballard became less requisite, and the general arrangement was ended. To Ballard's call for the principal of the loan, the charge of usury was for the first time suggested by Gillette. In view of the evidence, I think it would be a gross misconstruction to treat this transaction as a cover or device for the taking of illegal interest. If the transactions were less mutually advantageous than the proofs show it to have been, the inference of a usurious design would be still inadmissible, because such an inference will not in any case be made when the opposite conclusion can be reasonably and fairly arrived at. But the arrangement was highly advantageous to Gillette, indispensable to his undertaking the business, so far as the loan was concerned, and very conducive to its success, so far as the aid and services of the other parties were involved. It was, to some extent, a partnership, calling for friendly and confidential relations. Having derived from it the benefits which it was fitted to give in virtue of that character, the complainant cannot now ask this court to transform it into a relation of another description, and assign market prices to board and to services which were appraised by himself, on a different principle and with a different aim. To do so would be in accordance neither with legal principles nor with right.

I will advise a decree as above.